## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **FREDDY RAFAEL GOMEZ, SR.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**UNION CITY BOARD OF EDUCATION, MAYOR BRIAN P. STACK, in his official and individual capacities, JUSTIN MERCADO, in his official and individual capacities, JOHN DOES 1-10, and XYZ CORP. 1-10,**<br><br>    **Defendants.** | Civ. No. 22-3454 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Presently before the Court is the motion of Defendant Mayor Brian P. Stack (DE 5)[1] to dismiss Count Four of the Complaint (DE 1-1) and the motion of Defendants Justin Mercado and the Union City Board of Education (DE 9) to dismiss Counts Two and Four of the Complaint. For the reasons set forth below, the motion of Mayor Brian P. Stack (DE 5) is **GRANTED**, and the motion of Justin Mercado and the Union City Board of Education (DE 9) is **DENIED** as to Count Two but **GRANTED** as to Count Four. The dismissal of Count Four is without prejudice.

### I.   BACKGROUND

Defendant Brian P. Stack, the Mayor of Union City, also serves as the Director of School Finance for the Union City Board of Education (the "Board").

---

[1]    Citations to the record will be abbreviated as follows:

"DE" = Docket entry number in this case

"Compl." = Plaintiff's Complaint (DE 1-1)

(Compl. ¶ 13.) Defendant Justin Mercado serves as the Secretary and Director of Facilities for the Board. (*Id.* ¶ 9.)

Plaintiff Freddy Gomez has been employed by the Board as an Attendance Officer since about October 2007. (*Id.* ¶ 4.) Additionally, Gomez operates a local newspaper titled *La Noticia* and produces a show titled *Freddy Gomez es el 4to Poder*, which airs on Cablevision and Gomez's YouTube channel. (*Id.* ¶¶ 7–8.) Gomez uses his television show and newspaper to "express his opinions concerning Stack and his administration's failure to adequately address various issues in Union City." (*Id.* ¶ 31.) Prior to the events giving rise to the Complaint, the Board ran advertisements in Gomez's newspaper, dating back to about the mid-1990s. (*Id.* ¶ 27.)

According to the Complaint, Stack and Mercado have engaged in a conspiracy to take adverse employment action against Gomez in retaliation for his free speech and political affiliation. (*Id.* ¶ 24.) In February 2021, Gomez criticized Stack's management of snow removal on his television show. (*Id.* ¶ 26.) Thereafter, at the Board's offices, Mercado told Gomez "in a threatening manner" to cease critiquing Union City and Stack on his television show and social media. (*Id.* ¶ 28.) On May 3, 2021, Gomez attended a press event at the Union City High School, during which Mercado approached Gomez and stated "Brian [Stack] wants to know if you are here during working hours," to which Gomez responded that he had taken a personal day. (*Id.* ¶¶ 32-35.) Mercado then ordered a police officer to escort Gomez from the event. The officer did not comply but did deny Gomez access to the event's press area. (*Id.* ¶¶ 37-38.) The following day, Stack notified Gomez that the Board would no longer advertise in his newspaper. (*Id.* ¶ 42.)

On May 18, 2021, Gomez uploaded to his social media account a television episode containing content that was "highly critical" of Stack's administration. (*Id.* ¶ 44.) A few days later, on May 21, 2021, Gomez received a

"notice of disciplinary charges."[2] (*Id.* ¶ 46.) The notice stated that Gomez was required to attend a meeting to discuss insubordination and conduct unbecoming regarding an "[i]ncident on 5/3/21 at Union City High School" and the "[f]iling of [f]alse [u]nemployment [c]laim on August 9, 2020." (Compl. Ex. 3.)[3] The meeting was scheduled for May 25, 2021, and would be attended by Mercado and the Assistant to the Superintendent/Human Resources. (*Id.*)

Gomez appeared at the meeting on May 25, 2021, accompanied by the Union Representative and Union President. (*Id.* ¶ 50.) The Complaint states that defendants did not present any evidence during the meeting to support the charges, whereas Gomez presented evidence exonerating him of both charges. (*Id.* ¶¶ 51–52.) That same day, Gomez received a notice informing him that the Board would be discussing his employment status during its next meeting on May 27, 2021. (*Id.* ¶ 53.) On May 28, 2021, Gomez received a letter summarizing the May 25th meeting. (*Id.* ¶ 55 & Ex. 5.) That letter also repeated the allegations stated in the May 20th letter. (*Id.*)

In or about November 2021, Gomez uploaded an episode of his television show, which discussed "alleged sexual misconduct by Stack" as well as the already pending allegations against the Board. (*Id.* ¶ 61.) Sometime thereafter, Gomez was informed that he and his wife (who is employed by the Board as a security guard) would be transferred to different schools, effective February 1, 2022. (*Id.* ¶ 64.) As a result, Gomez and his wife were required to work different hours, perform different duties, and travel farther for work. (*Id.* ¶ 66.) Gomez also lost his office and was constantly ignored or treated in a hostile manner in the workplace. (*Id.*)

---

[2]   The notice is dated May 20, 2021. Gomez states that he received it on May 21, 2021. (Compl. ¶ 46 & Ex. 3.)

[3]   All exhibits cited herein are attachments to the Complaint; I therefore may rely on them to decide these motions to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

Gomez filed his Complaint in Hudson County Superior Court on April 8, 2022, asserting four counts: violation of 42 U.S.C. § 1983 as to Stack and Mercado (Count One); violation of 42 U.S.C. § 1983 as to the Board (Count Two); violation of 42 U.S.C. § 1985 as to Stack and Mercado (Count Three); and defamation as to all defendants (Count Four). Mercado removed the case to this Court on June 3, 2022.[4] On June 24, 2022, Stack filed a partial motion to dismiss the Complaint. (DE 5.) In response, Gomez's counsel filed a letter brief on July 18, 2022. (DE 10.) Mercado and the Board filed their partial motion to dismiss the Complaint on July 1, 2022. (DE 9.) Gomez did not file any response.[5] I nevertheless analyze the merits of the motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (motion to dismiss is not to be granted solely on the basis that an opposition has not been filed in accordance with local rules).

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

---

[4]    I note that Mercado filed the notice of removal more than thirty days after service of the documents. (*See* DE 1-2 p. 37) Mercado asserts that removal was timely because he was not properly served. (DE 1 ¶ 3.) Gomez has not filed a motion to remand or otherwise challenged the timeliness of the removal. Therefore, I find that the timeliness of the removal does not appear to be disputed. *See Farina v. Nokia Inc.*, 625 F.3d 97, 114–15 (3d Cir. 2010) (recognizing that the "thirty-day time limit for removal is a procedural provision, not a jurisdictional one" and that failure to move to remand within thirty days of the notice of removal, pursuant to 28 U.S.C. § 1447, results in waiver of the objection).

[5]    On October 19, 2022, Plaintiff filed a letter inquiring as to the status of the motion, but that letter contained no substantive argument. (DE 11.)

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III.   DISCUSSION

### A. Defamation (Count Four)

All defendants move to dismiss Count Four, the defamation claim, because it is based entirely on statements made in connection with Gomez's disciplinary hearing and, therefore, such statements are privileged and entitled to immunity from suit. (DE 5-1 p. 7; DE 9-1 p. 13.)

Under New Jersey law, a defamation claim requires "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; . . . (3) fault amounting at least to negligence by the publisher"; and (4) damages. *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (N.J. 2004) (citation omitted). However, New Jersey recognizes a litigation privilege immunizing from liability statements "made in the course of judicial, administrative, or legislative proceedings." *Kersey v. Becton Dickinson & Co.*, 433 F. App'x 105, 110 (3d Cir. 2011) (quoting *Hill v. N.J. Dep't of Corr.*

*Comm'r*, 776 A.2d 828, 840 (N.J. Super. Ct. App. Div. 2001)). New Jersey's absolute litigation privilege applies to communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Ashmore v. Ashmore*, 485 F. App'x 597, 599 (3d Cir. 2012) (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)). The litigation privilege applies "to all statements or communications in connection with the judicial proceeding," *Hawkins*, 661 A.2d at 289, and "extends beyond in-court proceedings so that litigants can engage in discovery and investigation, so that witnesses are not prohibited from coming forward, and so that settlement negotiations are not hindered." *Ashmore*, 485 F. App'x at 599. "Whether a defendant is entitled to the privilege is a question of law." *Hawkins*, 661 A.2d at 289.

There is support for finding that a disciplinary hearing qualifies as a quasi-judicial proceeding. The court in *Le v. University of Medicine & Dentistry* found that a university's disciplinary hearing regarding allegations that the plaintiff-student cheated on his exam was quasi-judicial in nature and that, as a result, the litigation privilege applied to the plaintiff's claims for false light and defamation arising out of the hearing. No. 08-cv-991, 2009 WL 1209233, at *6–*7 (D.N.J. May 4, 2009), *aff'd*, 379 F. App'x 171 (3d Cir. 2010). In reaching that conclusion, the court considered that the plaintiff received notice of the charge and hearing, each side presented evidence and witnesses during the hearing, the plaintiff was permitted to consult with counsel, and the hearing was subject to appellate-style review. *Id.*

Here, Gomez's defamation claim is based solely on statements made in connection with the May 25, 2021, disciplinary hearing. According to the Complaint, defendants made defamatory statements in their May 20, 2021, letter, which informed Gomez of the disciplinary hearing and the reasons for the same. (Compl. ¶¶ 46–48 & Ex. 3.) Defendants allegedly repeated those false and defamatory accusations during the May 25th hearing and in their letter

dated May 28, 2021, which summarized the May 25th hearing. (*Id.* ¶¶ 50–55.) Therefore, it is facially appropriate to consider whether New Jersey's litigation privilege warrants dismissal of Gomez's defamation claim.

Defendants rely on *Le.* (DE 5-1 p. 7; DE 9-1 p. 13.) In response to Stack's motion to dismiss, Gomez concedes that "the May 25, 2021 hearing constituted a quasi-judicial proceeding." (DE 10 p. 2.) On that basis, Gomez states that he does not object to dismissal of his defamation claim against Stack for "any statements made in the context of the May 25, 2021 hearing." (*Id.*) Because Plaintiff acknowledges that the May 25th hearing was a quasi-judicial proceeding and does not seek to pursue his defamation claim against Stack for statements made in connection with that hearing, Count Four will be dismissed without prejudice as to Defendant Stack.

Gomez, however, filed no response to the motion to dismiss by Mercado and the Board. I see no reason why Gomez's concession in response to Stack's motion to dismiss—that "the May 25, 2021 hearing constituted a quasi-judicial proceeding"—should not apply equally to his defamation claim against Mercado and the Board. As stated above, all alleged defamatory statements relate to the May 25th disciplinary hearing. Therefore, Count Four will be dismissed without prejudice as to Defendants Mercado and the Board as well.

## B. 42 U.S.C. § 1983 (Count Two)

The Board also moves to dismiss Count Two, which alleges a violation of 42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must allege: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).) Under *Monell*,[6] "municipalities and other local governmental bodies are 'persons' within the meaning of § 1983," *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997); accordingly, "they may

---

[6]     *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

be held liable under § 1983 when the municipality itself causes the violation." *Suber v. Wright*, 574 F. App'x 207, 212 (3d Cir. 2014). To plead a municipal liability claim, the plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A policy exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* Similarly, a custom can be "proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.*

The Third Circuit has also recognized that "an official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367–68 (3d Cir. 2005) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Under that single-decision theory, municipal liability may be imposed only "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. "Accordingly, even one decision by a school [board], if [it] were a final policymaker, would render [its] decision district policy." *McGreevy*, 413 F.3d at 368. Whether the entity is a final policymaker is a question of state law. *Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 128 (3d Cir. 2016).

The Complaint alleges that the decision to transfer Gomez's job assignment was an act of the Board itself: "On or about January 27, 2022, a Board meeting was held. Subsequently, Mr. Gomez was informed that the Board had approved the transfer of Mr. Gomez . . . effective February 1, 2022." (Compl. ¶¶ 63–64.) Defendants do not make any argument that the Board lacked final decision-making authority with respect to Gomez's transfer. (*See* DE 9-1 pp. 8–10.) Instead, Defendants assert that Count Two must be dismissed because the Complaint does not allege that the Board acted with any "discriminatory animus" or "knew anything about Gomez's alleged personal

conflict with Mercado or Mayor Stack." (*Id.* p. 10.) Such an argument goes primarily to the factual merits of Gomez's First Amendment retaliation claim.

"To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019).

For purposes of this motion, the Board does not contest the first two elements, *i.e.,* that Gomez's alleged speech was protected under the First Amendment and that the alleged retaliatory conduct would deter a person of ordinary firmness. Rather, the Board's argument appears to address the third, causation factor. On that factor, Gomez has alleged sufficient, if not overwhelming, facts. Contrary to the Board's assertion, the Complaint alleges that the Board may well have been aware of the conflict between Gomez, Mercado, and Stack. On May 20, 2021, the Assistant to the Superintendent/ Human Resources sent Gomez a letter informing him of the disciplinary hearing scheduled on May 25, 2021. (Compl. Ex. 3.) The letter stated that the hearing "could adversely affect [Gomez's] employment with the Board." (*Id.*) Then, on May 25, 2021, Gomez received a second letter, also from the Assistant to the Superintendent/Human Resources, informing him that the Board would "consider an issue involving [his] employment status" at its next meeting and that his "rights as an employee may be adversely affected." (Compl. Ex. 4.) The third letter, dated May 28, 2021, confirmed the May 25th hearing, described the May 3rd interaction between Mercado and Gomez, and referenced the May 25th letter. (Compl. Ex. 5.) In response, on June 1, 2021, Gomez wrote a letter to the Board, with attention to the Assistant to the Superintendent/Human Resources, in which he explained his version of the interaction with Mercado on May 3rd, including Mercado's alleged statement that "Brian wants to know if you are here during working hours." (Compl. Ex. 6.)

As to the Board's decision to transfer Gomez to a different school, the Complaint states that, in November 2021, Gomez uploaded an episode of his television show, which criticized both the Board and Stack. (Compl. ¶ 61.) About two months later, following the Board's meeting on January 27, 2022, Gomez was informed that the Board approved his transfer to a different school. (*Id.* ¶¶ 61–64.) Gomez asserts that the transfer was "done purposefully to retaliate against [him]." (*Id.* ¶ 65.)

The allegations connecting the Board's decision to transfer Gomez and his speech are sparse; however, when considered alongside the events related to the disciplinary hearing, they are sufficient to warrant further discovery. Therefore, the motion to dismiss Count Two is denied.

## IV.    CONCLUSION

Stack's motion to dismiss Count Four of the Complaint is **GRANTED**. Mercado and the Board's motion is likewise **GRANTED** as to Count Four. Mercado and the Board's motion to dismiss is **DENIED** as to Count Two. The dismissal of Count Four is without prejudice. A separate order will issue.

Dated: January 18, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**